IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL INDICTMENT |
| | : | |
| | : | NO. 1:09-CR-551-06-WSD |
| v. | : | |
| | : | |
| JESUS RAMOS, | : | |
| a.k.a. C-1. | : | |

## UNITED STATES' SENTENCING MEMORANDUM

Comes now the United States of America, by Sally Quillian Yates, United States Attorney for the Northern District of Georgia, and John Horn and Elizabeth Hathaway, Assistant United States Attorneys, and files this Sentencing Memorandum.

The United States has only one objection to the presentence report, that Ramos is not eligible for the recommended two-point reduction for a minor role in the offense pursuant to section 3B1.2 of the Sentencing Guidelines. This conclusion is reached in two ways. First, in applying this circuit's interpretation of section 3B1.2 in United States v. Rodriguez de Varon, 175 F.3d 930 (11th Cir. 1999), the PSR holds Ramos accountable at sentencing only for his own conduct in transporting drug proceeds, and Ramos is not substantially less culpable than the average participant as it pertains to this conduct, especially considered in light of the case law discussing minor role for couriers discussed in more detail below. And, as Rodriguez de Varon

instructs, this first step is dispositive on the role issue.

Second, even if the Court continues to the second step of comparing Ramos's conduct to other identifiable participants in the criminal conduct set forth in the PSR, Ramos is not substantially less culpable than the average participant in this relevant conduct. The government anticipates that the government and Ramos will offer differing interpretations of the conduct against which Ramos' criminal conduct is measured in this step, and these differing interpretations will require the Court–if it reaches this second step–to define its comparison to limit the backdrop to the PSR's relevant conduct, rather than the global operations of the Sinaloa drug cartel.

Following its discussion of the role issue, the government respectfully submits that, if the Court sustains the government's objection, the Court should vary downward from the applicable Guidelines custody range and impose a sentence of 100 months.

## I   Ramos is not eligible for a minor role under section 3B1.2

As an initial matter, the government respectfully disagrees with the PSR's suggestion that the minor role reduction set forth in § 3B1.2(b) applies merely if the defendant is "less culpable than most other participants." PSR ¶ 43. As Application Note 3(A) to section 3B1.2 states, a reduction for both the minor and minimal role guidelines requires a higher showing, that the defendant is "substantially less culpable

2

than the average participant." § 3B1.2 comment, n.3(A). Although Application Note 5 contains the language "less culpable" when referring to minor role, Application Note 3(A) specifies that a showing that a defendant is "substantially less culpable than the average participant" is a prerequisite for both a minor and minimal role reduction, and the Eleventh Circuit has expressly recognized as much. United States v. Castro-Palacios, 270 F. App'x 877, 879 (11th Cir. 2008) ("Furthermore, a defendant is not entitled to a minor-role reduction merely because he demonstrates that his role in the relevant conduct was less than that of other identifiable participants.... To receive a mitigating-role reduction, the defendant must prove that he was substantially less culpable than most other participants in the relevant conduct."); United States v. Dominguez-Chacon, 254 F. App'x 786, 788 (11th Cir. 2007) ("The two-level reduction applies to a defendant 'who is less culpable than most other participants, but whose role could not be described as minimal.' [cit.] The Commentary further provides that '[t]his section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant.'") (emphasis in original). Other circuits adopt the same interpretation. E.g., United States v. Garcia, 176 F. App'x 539, 540 (5th Cir. 2006); United States v. Kelso, 97 F. App'x 543, 546 (6th Cir. 2004); United States v. Daniels, 95 F. App'x 228, 228 (9th Cir. 2004). Consequently, Ramos must

prove by a preponderance of the evidence that he is "<u>substantially</u> less culpable than the average participant" in the relevant conduct attributed to him in the PSR.

1.     **Under <u>Rodriguez de Varon's</u> first prong, Ramos is only being held accountable for his own transportation of drug proceeds, and he did not play a minor role with respect to this conduct**

The starting point for assessing whether a defendant is entitled to a minor role reduction is the Eleventh Circuit's opinion in <u>Rodriguez de Varon</u>. As <u>Rodriguez de Varon</u> instructs:

> first, and most importantly, the district court must measure the defendant's role against the relevant conduct for which she was held accountable at sentencing; we recognize that in many cases this method of analysis will be dispositive.

> second, the district court may also measure the defendant's role against the other participants, to the extent that they are discernable, <u>in that relevant conduct</u>.

175 F.3d at 945. With respect to the first test, the PSR holds Ramos accountable only for his own conduct; the quantity of drugs attributed to him consists of only the quantity of cocaine that corresponds to the amount of drug proceeds he transported in his truck in August 2005. <u>See</u> PSR ¶ 39. Under this analysis, Ramos is not substantially less culpable than the average participant as it pertains to this conduct, especially considered in light of the case law discussing minor role for couriers in these situations. And, as <u>Rodriguez de Varon</u> points out, this assessment can be dispositive of the minor role issue. <u>See</u> <u>United States v. Lopez</u>, 2010 WL 3259393,

4

at *5 n.11 (11th Cir. Aug. 18, 2010) (citing <u>Rodriguez de Varon</u> to conclude that a court is not required to engage in the second prong of that decision's analysis).

The case law examining the application of the minor role guideline to couriers provides a helpful backdrop to <u>Rodriguez de Varon</u>'s first prong.  These cases hold that, while courier status does not by itself eliminate a defendant's entitlement to a minor role reduction, a courier's role is often significant–even critical–to the successful operations of a drug conspiracy, especially as it pertains to the operations with which the defendant was personally involved.  As noted by a district court in Texas:

> Amador-Velasco claims the evidence shows his role in the offense was minor. He alleges that a Mr. Becerra recruited him to smuggle U .S. currency between Mexico and the United States; there was no mention of cocaine. By acting only as a courier, Amador-Velasco reasons he played only a minor role. Case law, however, does not support Amador-Velasco's reasoning or interpretation.

<u>Velasco v. United States</u>, No. 5-08-CV-114, 2008 WL 4692377, at *4 (S.D. Texas Oct. 22, 2008).  <u>See</u> <u>Castro-Palacios</u>, 270 F. App'x at 878 ("in the drug courier context, a courier cannot prove that [he] is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which [he] was a minor participant but for which [he] was not held accountable. ... Although courier status alone neither precludes nor establishes minor participation in an offense, when a drug courier's

relevant conduct is limited to [his] own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs.") (citations and internal quotation marks omitted). <u>See also</u> <u>United States v. Ordonez</u>, 334 F. App'x. 619, 624-25 (5th Cir. 2009) ("To the extent [the defendant] argues that he was entitled to the [minor role] reduction because he was a mere drug courier, his argument is unavailing under this court's case law. [cits.]  To the extent Ordonez argues that he should have received the disputed adjustment because he was less culpable than others involved in the offense, his argument is unavailing.  Ordonez knew that he was carrying drugs and he expected to be paid a substantial sum of money for his activities.  Ordonez also admitted making at least three similar prior drug trafficking trips.  Furthermore, Ordonez's commission of the instant offense was 'indispensable' and essential to the planned distribution of the drugs."); <u>United States v. Alverez</u>, 235 F.3d 1086, 1090 (8th Cir. 2000) ("Transportation is a necessary part of illegal drug distribution, and the facts of the case are critical in considering a reduction for minor role.").

Here, the government submits that Ramos played an important role in the drug trafficking conduct associated with the drug proceeds he transported.  Without his transportation of the drug proceeds back to Texas, the distribution of these kilograms of cocaine would have been useless.  Like the cocaine courier in <u>United States v.</u>

Boyd, 291 F.3d 1274 (11th Cir. 2002), the distribution of this cocaine would not have been successful "but for" Ramos's participation. Id. at 1277.  Ramos therefore is not entitled to a minor role reduction, and this first prong of the Rodriguez de Varon analysis is dispositive to the issue.

>    **2.    If the Court proceeds to the Second Prong, Ramos is not substantially less culpable than the average participant in the relevant conduct properly attributable to him under Rodriguez de Varon**

The primary instruction in Rodriguez de Varon is that "[o]nly if the defendant can establish that she played a relatively minor role in the conduct for which she has already been held accountable--not a minor role in any larger criminal conspiracy--should the district court grant a downward adjustment for minor role in the offense." 175 F.3d at 944.

Thus, the Court first must determine how broadly to define the relevant conduct against which Ramos's role will be measured.  As discussed below, the case law instructs the Court to compare Ramos's conduct against that of other, identifiable participants in the relevant conduct defined by the PSR.  Importantly, this is different than measuring Ramos's conduct against that of all other identifiable participants in a broader conspiracy.  Rodriguez de Varon makes this plain: "the district court may consider only those participants who were involved in the relevant conduct attributed

<u>to the defendant</u>.  The conduct of participants in any larger criminal conspiracy is irrelevant."  <u>Id.</u> at 944 (emphasis added); <u>Castro-Palacios</u>, 270 F. App'x at 879 ("...although we have acknowledged that the first method of analysis will be dispositive in many cases, the district court may also measure a defendant's culpability against that of other participants in a conspiracy. [cit.] However, a district court is limited to considering only those participants who are identifiable by the evidence <u>and who were involved in the relevant conduct attributed to the defendant</u>. [cit.] "The conduct of participants in any larger criminal conspiracy is irrelevant.").

Here, Ramos served as a courier for substantial amounts of drug proceeds.  On August 17-18, 2005, he was caught with just over $2.5 million in cash that represented the proceeds of cocaine sales–the equivalent of 155 kilograms of cocaine, based on the prices charged by this organization. PSR ¶ 39.  Both Roberto Garcia and Luis Trevino said that Ramos made additional trips to both Atlanta and Memphis; Trevino stated that he recalls one trip by Ramos per month.  PSR ¶¶ 29-30.  The government believes this evidence establishes that Ramos made approximately 6 trips.  Trevino told agents that they did not deliver money to truckers to take south unless they had collected in excess of a million dollars, and often provided several million dollars as evidenced by the August 2005 seizure.  Consequently, using conservative estimates Ramos personally participated in the transportation of

8

approximately $6-12 million, which constitutes the drug proceeds of 370 to 738 kilograms of cocaine.  This factor, by itself, counsels strongly against a minor role reduction.  United States v. Benitez-Aprilla, 262 F. App'x 236, 238 (11th Cir. 2008) (affirming denial of minor role reduction to a crew member of a go-fast drug courier boat because he was involved in the transportation of 995 kilograms of cocaine, concluding that the "large amount of drugs is dispositive").

The indictment charges a broad conspiracy, including Ramos, that involves high-level leaders of the Sinaloa Cartel as it existed during the time of the offense, in approximately 2005-early 2006.  These leaders, Edgar Valdez-Villarreal and Carlos Montemayor, managed a drug distribution organization associated with the Sinaloa Cartel in Mexico.  The Sinaloa Cartel was involved in drug trafficking at the highest possible level, including the exportation of thousands of kilograms of cocaine, methamphetamine, and marijuana to numerous countries including the United States, many murders, trafficking in firearms, public corruption, money laundering, and countless other operations.  However, as charged in the indictment, the conspiracy involved only the Valdez/Montemayor drug organization's importation of cocaine from Mexico and the resulting distribution of the cocaine to customers, and the resulting transportation of money back to Texas and, ultimately, Mexico.  The indictment does not charge the other, more broad activities of the Sinaloa Cartel, and

similarly doesn't charge other activities of Valdez Villarreal and Montemayor that occurred elsewhere in Mexico and the United States.  Appropriately, then, the PSR defines Ramos's relevant conduct to include only the activities of the organization as they pertain to the Flores cocaine distribution cell, without including the organization's broader activities in Mexico and elsewhere.

To the extent that Ramos is arguing that the PSR should measure his role in the offense against the backdrop of the Sinaloa Cartel's broader operations, including the broad conduct of the most senior cartel kingpin at that time, Arturo Beltran-Leyva, and the cartel leadership charged in the present indictment, Valdez-Villarreal and Montemayor, its international sources of cocaine, every Mexican member of the conspiracy, and all domestic personnel with which the cartel associates, this is both contrary to the PSR's findings and the holding in Rodriguez de Varon.  As noted, the PSR does not hold Ramos accountable for these broad operations in defining his own relevant conduct, and instead limits his relevant conduct to the activities of the Flores cocaine distribution cell.  Under these circumstances, the Eleventh Circuit directly rejects Ramos's theory:

> we have unambiguously held that a defendant's role in the offense may not be determined on the basis of criminal conduct for which the defendant was not held accountable at sentencing.  [cits.]  For example, in [United States v. Fernandez, 92 F.3d 1121, 1123 (11th Cir. 1996) (per curiam)], we considered whether a defendant's role in a drug offense

was properly determined by reference to the conduct that determined his base offense level or by reference to the greater drug conspiracy which produced that conduct. [cit.] Squarely rejecting the broader inquiry, we held that "the conspiracy on which a defendant's base offense level is founded is the relevant conspiracy for determining role in the offense.

Rodriguez de Varon, 175 F.3d at 941-42.

Rodriguez de Varon shows that a defendant simply cannot have it both ways. If Ramos wants the PSR to measure his role as a courier against a backdrop of relevant conduct that includes all the functions of the Sinaloa Cartel beyond the activities of the Flores cocaine distribution cell, then these additional operations necessarily must be included as Ramos's own relevant conduct. And, this relevant conduct necessarily will include violent acts associated with this cartel, public corruption, and other serious crimes. This broader relevant conduct could result in enhancements associated with guns and violence as well as the denial of the safety valve reduction, because the "offense" as defined in section 5C1.2 would include acts of violence. Finally, the total quantity of drugs imported could merit an upward departure from the base offense level of 38, pursuant to section 2D1.1, application note 16. These consequences could arise if the relevant conduct is defined more broadly to include all the cartel's activities.

It further is incorrect to argue that Ramos's conduct is measured against all the drug trafficking activities of even the Flores distribution cell. As stated before, the

Flores distribution cell alone imported and distributed thousands of kilograms of cocaine, well above the 150 kilograms that triggers the maximum base offense level of 38.  The PSR further describes how on November 11, 2005, when agents entered the Atlanta stash house to execute a search warrant, Roberto Garcia raised a pistol at one of the SWAT officers who was coming up the stairs.  PSR ¶ 31.  Luis Trevino meanwhile was driving to the stash house on the instructions of Hector Flores to investigate why the others weren't answering their phones, and told Flores that he would keep his phone on when he entered the residence in the event he had to fire the pistol he was carrying with him.  Id. ¶ 32.  Certainly, if Ramos argues that this relevant conduct was foreseeable to him for purposes of attribution under section 1B1.3 of the guidelines, it is reasonably foreseeable to him for purposes of other, more impactful sections of the guidelines as well.  Stated simply, Ramos may not pick and choose which elements of the organization's broader conduct are considered for purposes of minor role, and argue that they similarly do not apply with equal emphasis for other sections.

That said, the government believes that the relevant conduct for purposes of determining Ramos's sentence is defined correctly as is, which omits all these activities and functions that are not related to Ramos's own transportation of drug proceeds for the organization.  The government points out the consequences of a

12

broader definition of the relevant conduct as support for its argument that the relevant conduct correctly is defined much more narrowly.

The government acknowledges that, on a quantitative level, Ramos is substantially less culpable than the people charged in the current indictment, and also is less culpable than Hector Flores and the workers who staffed the organization's Atlanta and Memphis stash houses and worked for the organization on a daily basis. The government's position is that Ramos's culpability in the offense conduct nonetheless is not substantially less than the average participant, primarily because–as directed in Rodriguez de Varon, his conduct is measured against the backdrop of the relevant conduct attributed to him in the PSR.  If the Court nonetheless proceeds to the second step of the Rodriguez de Varon analysis, Ramos is not substantially less culpable than the workers in the Atlanta stash house, which the government submits are the "average participants" in this relevant conduct.  Indeed, the government will identify five additional people who worked in the Atlanta and Memphis stash houses for short periods of time, sometimes less than one month.  Ramos certainly is not substantially less culpable than these individuals.

For these reasons, the Court should sustain the government's objection to the minor role reduction under section 3B1.2.

**II.    The government respectfully submits that, if the Court sustains the government's objection to a minor role reduction, a reasonable sentence under the 18 U.S.C. § 3553(a) factors is 100 months**

The government respectfully submits that, if the Court rules that Ramos is not eligible for a minor role reduction, his resulting Guidelines custody range is 135-168 months. The government believes that, based on the specific circumstances of this case, the factors set forth in 18 U.S.C. § 3553(a) call for a sentence of 100 months, which is a downward variance from the applicable Guidelines range.[1]

The government notes that Ramos was pulled over by Georgia State Police in August 2005. Because of hurdles in the government's investigation of others, the government did not arrest Ramos until 2009. To the government's knowledge, Ramos has not engaged in any additional illegal conduct since he was found with the drug proceeds in this case. Consequently, the 135-to-168-month sentence recommended by the Guidelines is longer than is necessary to deter Ramos of further criminal conduct, and likely will be sufficient to deter others of similar conduct. The same is true with respect to the need to protect the public from further criminal conduct by Ramos. In this case, these factors weigh in favor of a downward variance, and the government submits that 100 months is a just and reasonable sentence.

---

[1] If the Court overrules the government's objection, the government recommends a sentence at the low end of the calculated range, and this argument should in no way be construed as an argument to vary from this recommendation.

The government further suggests that this sentence is reasonable when considering the Court's interest in imposing sentences that are proportional to the sentences of others.  To that end, the Court calculated the following final Guidelines ranges and imposed the following sentences:

| Defendant | Guidelines range | Sentence |
| --- | --- | --- |
| Jesus Hector Flores | 360 - life + 60 months | 460 months |
| Romero Roel Martinez | 262-327 + 60 months | 322 months |
| Roberto Garcia | 235-293 +60 months | 177 months (5K) |
| Luis Trevino | 235-293 + 60 months | 177 months (5K) |
| Joe Lopez | 324-405 + 60 months | 352 months |
| F. Villanueva-Castillo | | 132 months |

The government respectfully submits that a sentence of 100 months is reasonable and proportional to other sentences that the Court has imposed.

Respectfully submitted this the 6th day of January, 2010.

DAVID E. NAHMIAS
UNITED STATES ATTORNEY

/s/ *John Horn*
JOHN HORN
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 367210
600 U.S. Courthouse
75 Spring St., S.W.
Atlanta, GA  30303
404/581-6118
fax: 404-581-6171

<u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1(D)</u>

The United States certifies that this Response has been formatted using Times New Roman font in 14-point size.

*/s/ John Horn*
JOHN HORN
Assistant United States Attorney
Ga. Bar No. 367210

<u>CERTIFICATE OF SERVICE</u>

I certify that, on January 6, 2010, I electronically filed this Sentencing Memorandum with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Carl Lietz, Esq.

This the 6th day of January, 2010.

_/s/ *John Horn*_____

JOHN HORN
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 367210
600 U.S. Courthouse
75 Spring St., S.W.
Atlanta, GA  30303
404/581-6118
fax: 404-581-6171
Email: john.horn@usdoj.gov

1